Filed 3/14/25  Brooks v. Jason J. Emer, MD, P.C. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RUTHANN LEE BROOKS, Plaintiff and Respondent, v. JASON J. EMER, MD, P.C. et al., Defendants and Appellants. | B334409 (Los Angeles County Super. Ct. No. 23STCV20105) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Reversed and remanded.

Kahana & Feld, Mimi Ahn and Avi M. Attal for Defendants and Appellants.

Milon Pluas, Angel D. Pluas, Joshua Milon, Christopher J. DeClue and Jose L. Valdez for Plaintiff and Respondent.

_____

In August 2023 Ruthann Lee Brooks filed a complaint against her former employers, Jason J. Emer, MD, P.C. (JEMD), Jason Emer, M.D., and Insperity PEO Services, L.P., for pregnancy and gender discrimination and related causes of action under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) and for Labor Code violations. The defendants moved to compel arbitration pursuant to an arbitration agreement Brooks had signed upon commencing employment with defendants. The trial court denied the motion, finding unconscionability permeated the arbitration agreement because it was procedurally unconscionable and had several substantively unconscionable terms, making severance infeasible.

On appeal, JEMD and Emer (collectively, the JEMD defendants)[1] argue the trial court erred in finding unconscionability because the arbitration agreement delegated to the arbitrator exclusive authority to decide unconscionability. However, the JEMD defendants forfeited this argument by failing to raise it in the trial court and affirmatively requesting the trial court decide this issue.

The JEMD defendants also contend the agreement is not unconscionable, or in the alternative, the trial court abused its discretion in not severing any unconscionable terms. We conclude the provision of the arbitration agreement limiting discovery is unconscionable but the interests of justice in this case are served by severing the unconscionable provision. We reverse.

---

[1] Insperity has not appealed the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Brooks's Employment and the Arbitration Agreement*

JEMD is a medical practice owned by Emer that specializes in dermatology and plastic surgery.  JEMD contracts with Insperity to provide human resources services, including onboarding new employees.

Brooks was employed by JEMD as an aesthetician and skin care specialist from May 12 to December 22, 2022.  In early May 2022 Brooks received a letter from JEMD offering her employment "contingent on" Brooks "signing the Company's Confidentiality, Inventions Assignment, and Arbitration Agreement."[2]  On May 7, 2022 Brooks signed the letter evidencing her acceptance of employment.

JEMD required new employees to review and electronically sign documents, including an arbitration agreement.  These onboarding documents were accessed and electronically signed through Insperity's online portal.  On May 11, 2022 Brooks logged in to the portal and reviewed and electronically signed the eight-page, single-spaced arbitration agreement titled "Mutual Arbitration Agreement."[3]

---

[2]    The offer letter stated the arbitration agreement was enclosed with the letter.  However, there were no attachments to the letter included in the record.

[3]    The arbitration agreement is written in English and Spanish, with each paragraph appearing in English followed by the translation of that paragraph in Spanish.  Without the Spanish translation paragraphs the agreement would be approximately four pages long.

The arbitration agreement provided that Insperity, JEMD, and Brooks "mutually agree to resolve by arbitration . . . all claims or disputes related to or arising out of [Brooks's] application for employment, [Brooks's] employment, or the termination of [Brooks's] employment with Insperity and/or [JEMD]." The agreement further stated that all claims "will be decided by a single arbitrator through final and binding arbitration and not by way of court or jury trial."

The arbitration agreement required the parties to "participate in a mediation before invoking binding arbitration. Mediation is a condition precedent to arbitration." Any applicable statute of limitations would be tolled during the mediation; however, time limits for exhausting administrative remedies would not. The mediation would be conducted by a mutually selected mediator or, if the parties could not agree, the mediator would be selected pursuant to the American Arbitration Association (AAA) Employment Mediation Procedures. Insperity and/or JEMD would pay the cost of the mediation.

Section G(v) of the arbitration agreement provided that the arbitration "will be held in accordance with the then current Employment Arbitration Rules" of the AAA. However, the agreement specified as to discovery that "[t]he parties have the right to conduct adequate civil discovery, and to present witnesses and evidence." The next sentence stated each party "has the right" to specified discovery, including the right to take depositions of "two individual fact witnesses" and experts designated by another party, request documents, and subpoena witnesses and documents, including documents from third parties. Parties could obtain additional discovery "based on the

Arbitrator's determination whether additional discovery is warranted by the circumstances of a particular case."

The agreement provided the parties would pay their own attorneys' fees "subject to any remedies to which that party may later be entitled under applicable law." Brooks would also be required to pay "an initial filing fee in the amount of $300 or an amount equal to the applicable filing fee had the claim been brought in a court of law, whichever is less." Insperity and/or JEMD would pay all remaining arbitration fees.

Finally, the agreement included a severability clause stating that "if any other term or provision of this Arbitration Agreement is held to be invalid, void, or unenforceable, the remainder of the provisions of this Arbitration Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated."

B.    *Brooks's Complaint*

On August 21, 2023 Brooks filed her complaint alleging 16 causes of action, including causes of action under FEHA for gender and pregnancy discrimination, disability discrimination, failure to provide reasonable accommodations, failure to engage in the interactive process, retaliation, failure to prevent discrimination and retaliation, and wrongful termination in violation of public policy. The complaint also alleged violations of the Labor Code for whistleblower retaliation, failure to pay wages or commissions, failure to pay overtime wages, failure to provide meal and rest breaks, failure to provide accurate itemized wage statements, and failure to pay wages due at time of separation. Brooks also alleged causes of action for breach of contract and breach of the covenant of good faith and fair dealing.

C.    *The Motion To Compel Arbitration*

On November 7, 2023 the JEMD defendants and Insperity moved to compel arbitration of Brooks's claims.[4]  The defendants argued Brooks consented to the arbitration agreement, her claims were subject to the arbitration agreement, and the arbitration agreement satisfied the requirements set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*).

In opposition Brooks argued the arbitration agreement was unenforceable because it was not signed by JEMD and Insperity and it violated FEHA's prohibition against pre-employment releases of claims (Gov. Code, § 12964.5).  Brooks also argued the agreement was procedurally and substantively unconscionable.  In a declaration submitted in opposition to the motion to compel, Brooks explained she was sent an email containing a link to the online portal prior to her first day of employment.  Brooks was told that she was required to complete and sign the onboarding documents by the end of her first day at work.  Further, she was unable to move to the next page of the documents until she had completed and signed the current page.

Following argument from counsel,[5] on December 22, 2023 the trial court denied the motion to compel arbitration.  The court found the agreement was procedurally unconscionable, stating it was "clearly a classic take-it-or-leave-it contract of adhesion" and Brooks had no "meaningful choice or opportunity to negotiate."

---

[4]    Emer is not a party to the arbitration agreement, and the parties do not address under what legal theory, if any, he can compel Brooks to arbitrate claims against him in his individual capacity.  .

[5]    There was no court reporter at the hearing.

6

The court also found substantive unconscionability based on the significantly limited discovery, mandatory mediation, and filing fee provisions. Finally, although not addressed by the parties in their briefing on the motion, the court considered whether the unlawful provisions could be severed from the remainder of the arbitration agreement pursuant to the agreement's severance clause. The court found severance was not feasible because "procedural and substantive unconscionability permeate the Arbitration Agreement. Further, choosing to sever multiple clauses would encourage the drafters of arbitration agreements to include as many unconscionable clauses as possible, knowing courts might catch some but not all of them."

The JEMD defendants timely appealed.

## DISCUSSION

A. *Governing Law and Standard of Review*

"A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, 'save upon such grounds as exist for the revocation of any contract.' (Code Civ. Proc., § 1281.)" (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez*); accord, *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).) "'"[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA' or California law." (*OTO*, at p. 125; accord, *Ramirez*, at p. 492; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246.)

"The 'general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the

7

contract contains terms that are unreasonably favorable to the other party.' [Citations.] Unconscionability has both a procedural and a substantive element." (*Ramirez, supra,* 16 Cal.5th at p. 492; accord, *OTO, supra,* 8 Cal.5th at p. 125.) "Procedural unconscionability 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.'" (*Ramirez,* at p. 492.) "Substantive unconscionability looks beyond the circumstances of contract formation and considers 'the fairness of an agreement's actual terms' [citation], focusing on whether the contract will create unfair or one-sided results." (*Id.* at p. 493; accord, *OTO,* at p. 125.)

"Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree. [Citation.] Courts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Ramirez, supra,* 16 Cal.5th at p. 493; accord, *OTO, supra*, 8 Cal.5th at p. 126 ['"The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement."'].) "'[W]hether a contract is fair or works unconscionable hardship is determined regarding the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware.'" (*Ramirez,* at p. 493.)

The party opposing enforcement of the arbitration agreement has the burden to establish unconscionability.

(*Ramirez*, *supra,* 16 Cal.5th at p. 492; *OTO, supra*, 8 Cal.5th at p. 126.)  We review the validity of the arbitration agreement de novo.  (*Ramirez*, at p. 493; *OTO*, at p. 126.)

B.    *The JEMD Defendants Forfeited Their Delegation Clause Argument*

The JEMD defendants argue the trial court was barred from deciding the question of unconscionability because the parties had agreed to delegate all issues regarding the enforceability of the arbitration agreement to the arbitrator.  The arbitration agreement states, "The Arbitrator, and not any federal, state, or local court, or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability, or waiver of this Arbitration Agreement."

While a court typically decides the threshold questions of whether an arbitration agreement is valid and enforceable, "[a]n exception to this rule applies when the parties have clearly and unmistakably agreed to delegate questions regarding the validity of the arbitration clause to the arbitrator.  [Citations.]  Such delegation clauses are generally enforceable according to their terms." (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1108; accord, *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 766.)

The JEMD defendants forfeited this argument by failing to raise it in their motion to compel arbitration or reply brief in the trial court.  Instead, their motion requested the trial court determine the issue of unconscionability—the very issue they now argue was delegated to the arbitrator.  The JEMD defendants' "litigation of that question in the trial court and in this court is inconsistent with the claim that the . . . issue was for

9

the arbitrator to decide," and it would be prejudicial to Brooks to consider the argument on appeal because she "has already litigated that question in the trial court and here." (*Mendoza v. Trans Valley Transport, supra,* 75 Cal.App.5th at pp. 769, 771 [delegation clause argument forfeited when raised for first time in reply brief in trial court]; accord, *Haydon v. Elegance at Dublin* (2023) 97 Cal.App.5th 1280, 1286-1287 [same].)

The JEMD defendants acknowledge they failed to raise the delegation argument in the trial court, but they urge us to exercise our discretion to consider the argument because the issue involves a question of law subject to de novo review. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["application of the forfeiture rule is not automatic," although "the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue"]; *Adams v. Murakami* (1991) 54 Cal.3d 105, 115, fn. 5 [a reviewing court has discretion to decide a forfeited issue "if it presents a pure question of law arising on undisputed facts, particularly when the issue is a matter of important public policy"].) The JEMD defendants do not contend the delegation issue in this case is one implicating an important public policy. Further, the JEMD defendants did not simply omit the delegation clause argument in the trial court— they affirmatively contradicted it by requesting the trial court decide the issue of unconscionability. Where a party asks the trial court to decide a motion to compel arbitration, it would be unfair to allow that party to raise the agreement's delegation of arbitrability only after the trial court refuses to enforce the arbitration agreement. We therefore decline to exercise our discretion to decide the issue.

10

C.    *The Arbitration Agreement Has Elements of Procedural Unconscionability*

Procedural unconscionability "is generally established by showing the agreement is a contract of adhesion, i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.] Adhesion contracts are subject to scrutiny because they are 'not the result of freedom or equality of bargaining.'" (*Ramirez*, *supra,* 16 Cal.5th at p. 492; accord, *OTO, supra,* 8 Cal.5th at p. 126 ["An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'"].)

If the "circumstances of the contract's formation created . . . oppression or surprise[,] . . . closer scrutiny of its overall fairness is required." (*OTO, supra,* 8 Cal.5th at p. 126; see *Baltazar v. Forever 21 Inc.* (2016) 62 Cal.4th 1237, 1245-1246.) "'"*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form."'" (*OTO*, at p. 126; accord, *De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 983.) "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'" (*OTO*, at pp. 126-127; accord, *Mills v. Facility*

11

*Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035, 1051 (*Mills*).) "[S]urprise" occurs where the arbitration agreement is "written in an extremely small font" with "'visually impenetrable'" paragraphs "filled with statutory references and legal jargon." (*OTO*, at p. 128.)

"Arbitration contracts imposed as a condition of employment are typically adhesive." (*OTO, supra*, 84 Cal.App.5th at p. 126.) "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz, supra*, 24 Cal.4th at p. 115; accord, *Ramirez, supra,* 16 Cal.5th at p. 494.)

The JEMD defendants assert the arbitration agreement was not imposed as a condition of employment because it contained an "opt-out" provision, which stated: "**Right to Opt-Out**. To opt[-]out, you must notify Insperity of your intention to opt out within thirty (30) days of your first receipt of this Arbitration Agreement. If you choose to opt-out, you must sign an opt-out form that is available at [website address] and email it back to [email address]. Unless and until you opt-out as provided in this paragraph, the dispute resolution procedures described in this Arbitration Agreement apply to all Covered Claims. You will not be subject to any adverse employment action as a consequence of opting out."

The JEMD defendants forfeited this argument by failing to raise it in the trial court. In their reply brief on appeal the JEMD defendants contend the opt-out provision "was raised in

12

Appellant[s'] moving papers on the motion such that Respondent was fully on notice that Appellants were identifying the opt-out clause and confirming Respondent's failure to take advantage of that opportunity." However, the only support in the record cited by appellants for this contention is a single line in the declaration of JEMD's chief financial officer stating that based on information and belief, "Ms. Brooks did not opt out of the Arbitration Agreement." The trial court briefs contained no discussion of the substance of the opt-out provision, nor was there any reasoned legal argument regarding its application. Accordingly, this argument is forfeited. (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 ["""When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited].""""].)

Although we have discretion to consider a forfeited argument, it would be unfair to do so here. It is undisputed that the offer letter JEMD sent to Brooks stated her employment was contingent on signing an arbitration agreement.[6] Because the JEMD defendants did not raise this argument in the trial court, Brooks had no opportunity to address whether she believed she

---

[6] The JEMD defendants argue the offer letter cannot be considered because it is not part of the arbitration agreement, which contained an integration clause stating the agreement "is the full and complete agreement of the parties." Although the integration clause is relevant to what evidence may be considered in determining the meaning of the arbitration agreement's terms, it does not bar consideration of the offer letter in determining procedural unconscionability, which addresses the circumstances of contract formation. (See *Ramirez, supra,* 16 Cal.5th at p. 492 ["[p]rocedural unconscionability 'addresses the circumstances of contract negotiation and formation'"].)

13

had the ability to opt-out of the arbitration agreement and still be employed by JEMD.

Moreover, the JEMD defendants have not disputed Brooks's statements in her declaration that she was directed to complete the online forms, including the arbitration agreement, by the end of her first day of employment; she did not have time to consult an attorney before signing the documents; the documents' contents were not explained to her prior to signing; and she was unable to move to the next page of the online forms without signing the current page. Because the arbitration agreement contained these elements of procedural unconscionability, we "'closely scrutinize the substantive terms "to ensure they are not manifestly unfair or one-sided."'" (*Mills*, *supra*, 84 Cal.App.5th at p. 1051.)

D. *The Arbitration Agreement Is Substantively Unconscionable*

As the Supreme Court explained in *Armendariz* and recently reaffirmed in *Ramirez,* based on "the basic principle of nonwaivability of statutory civil rights in the workplace," there are "five minimum requirements for the lawful arbitration of such rights pursuant to a mandatory employment arbitration agreement. Such an arbitration agreement is lawful if it '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. Thus, an employee who is made to use arbitration as a condition of employment "effectively may vindicate [his or her] statutory cause of action in the arbitral forum."'" (*Armendariz, supra,* 24 Cal.4th at p. 102;

14

accord, *Ramirez, supra,* 16 Cal.5th at p. 504.) We conclude the provision in the arbitration agreement for only limited discovery is substantively unconscionable but the pre-litigation mediation and filing fee requirements are not.[7]

1.    *The arbitration agreement does not provide for adequate discovery*

Although parties may "agree to something *less than* the full panoply of discovery," employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) . . . ." (*Armendariz, supra*, 24 Cal.4th at pp. 105-106.) "The denial of adequate discovery in arbitration proceedings leads to the de facto frustration of the employee's statutory rights." (*Id.* at p. 104.)

The Supreme Court recently addressed in *Ramirez* the factors trial courts should consider in determining whether a discovery limitation in an arbitration agreement is unconscionable. In that case, the employer-mandated arbitration provision allowed each party a maximum of four depositions, 20 total interrogatories (including subparts), and up to 15 requests for documents. (*Ramirez, supra,* 16 Cal.5th at p. 503.) Discovery disputes would be "'resolved by the arbitrator to allow a full and equal opportunity to all parties to present evidence that the arbitrator deems material and relevant to the resolution of the dispute.'" (*Id.* at pp. 503-504.) The plaintiff employee (Angelica Ramirez) argued the deposition limitations

---

[7]    It is undisputed the arbitration agreement provides for a neutral arbitrator and requires the arbitrator to "issue a reasoned written award and opinion."

15

were substantively unconscionable because she would need at least seven depositions to substantiate her FEHA claims, including the depositions of her former supervisor, people hired by her former supervisor while Ramirez was on pregnancy leave, and the employer's person most qualified (PMQ) regarding its human resources and pregnancy leave policies. (*Id.* at p. 505 & fn. 10.)

The *Ramirez* court reaffirmed the principles regarding adequate discovery articulated in *Armendariz* and stated "an arbitration agreement required as a condition of employment must generally permit employees sufficient discovery to adequately arbitrate any statutory claims." (*Ramirez, supra,* 16 Cal.5th at p. 505.) Further, "'adequate discovery is indispensable for the vindication of FEHA claims.'" (*Id.* at p. 504, quoting *Armendariz, supra*, 24 Cal.4th at p. 104.) However, the court disapproved of appellate decisions that had assessed the unconscionability of discovery provisions as applied to a particular plaintiff by "look[ing] to specific circumstances that only arose after the contract was executed." (*Ramirez*, at p. 505.) Thus, the court held, the Court of Appeal had improperly analyzed the discovery provision for unconscionability based on Ramirez's statement she needed to take seven depositions to substantiate her claims. (*Id.* at p. 505.) Rather, a proper "unconscionability assessment focuses on circumstances known at the time the agreement was made" and "general factors that can be examined without relying on subsequent developments." (*Id.* at pp. 505-506.)

The *Ramirez* court articulated five factors that should be considered in determining unconscionability of a discovery limitation: "[T]he types of claims covered by the agreement, the

16

amount of discovery allowed, the degree to which that amount may differ from the amount available in conventional litigation, any asymmetries between the parties with regard to discovery, and the arbitrator's authority to order additional discovery." (*Ramirez, supra,* 16 Cal.5th at p. 506.) However, in assessing the unconscionability of the discovery provision at issue, the *Ramirez* court focused on only the final factor—the arbitrator's authority to order additional discovery. The court concluded the language in the arbitration agreement and governing guidelines giving "the arbitrator the authority to resolve 'all discovery disputes' in a manner that allows 'a full and equal opportunity' to discover and present relevant and material evidence," if interpreted to authorize the arbitrator to order additional discovery, would "eliminate[] any unconscionability." (*Id*. at pp. 506-507.)

Applying the *Ramirez* factors, we conclude the discovery provision is substantively unconscionable. "'Employment disputes are factually complex, and their outcomes "are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice.""" (*Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1249 (*Murrey*).) In this context, limitations on discovery disproportionately favor the employer who already has in its possession documents concerning the employee's performance and likely employs the percipient witnesses and decisionmakers. (See *Mills, supra,* 84 Cal.App.5th at p. 1059 ["limits on written discovery seriously disadvantage the employee because [the employer] would have possession of most relevant documents"].)

17

This unfairness is compounded by the very limited discovery permitted by the arbitration agreement here.[8]  Unlike in conventional litigation (and the agreement in *Ramirez*), the employee had no right to propound interrogatories, which means the employee had no means to discover basic information about the employer's general employment practices, the identities of the decisionmakers, and the relationship among the three employers (JEMD, Emer, and Insperity).  Further, the agreement allowed depositions of expert witnesses and "two individual fact witnesses," but it did not provide for the deposition of a person most qualified (PMQ) to testify on behalf of the company.  Without interrogatories or a deposition of the company-designated PMQ, the employee would have no ability to determine which decisionmakers and percipient witnesses to depose or what documents to request, instead needing to use one or both of the allowable depositions to discover that information.  The employee would then be left with at most one deposition to gather evidence to substantiate the employment claims.  In contrast, because two separate companies signed the arbitration agreement, they would collectively be allowed to take four percipient witness depositions.  Moreover, as discussed, in employment cases it is the employer that typically possesses the relevant information.

---

[8]     The JEMD defendants argue Brooks failed to make a showing of what specific discovery she needed to support her claims.  However, as discussed, under *Ramirez*, we consider the type of discovery the parties would have envisioned at the time the arbitration agreement was signed with respect to covered claims, for example, the "general factors" relevant to substantiate potential employment claims under FEHA and for Labor Code violations.  (*Ramirez, supra,* 16 Cal.5th at pp. 505-506.)

The minimal discovery afforded under the agreement compared to conventional limitation and the asymmetry between the parties' access to discovery support a finding of unconscionability. (See *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 717 ["Given the complexity of employment disputes, the outcomes of which are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice, it will be the unusual instance where the deposition of two witnesses will be sufficient to present a case."]; see also *Jenkins v. Dermatology Mgmt., LLC* (2024) 107 Cal.App.5th 633, 647 [same].)

The JEMD defendants argue any unconscionability in the discovery provision is ameliorated by the authority of the arbitrator to permit additional discovery if "warranted by the circumstances of a particular case." This standard for additional discovery is certainly more permissive than the "substantial need" standard we found unconscionable in *Mills, supra,* 84 Cal.App.5th at page 1059 and the "compelling need" standard found unconscionable in *Fitz v. NCR Corp., supra,* 118 Cal.App.4th at page 709. However, it is not as robust as the standard approved in *Ramirez,* which provided for the arbitrator to allow additional discovery if necessary to "allow a full and equal opportunity to all parties to present evidence" that the arbitrator determines is material and relevant to the dispute. (*Ramirez, supra,* 16 Cal.5th at pp. 503-504.) The arbitration agreement here provided no guidance on what standard the arbitrator should use to decide what is "warranted by the circumstances of the case," other than that the parties have the

19

"right to conduct adequate civil discovery." (*Ramirez,* at p. 504.)[9] An arbitrator could, for example, reject a request by Brooks to propound interrogatories seeking relevant and material evidence, finding interrogatories were beyond the scope of discovery contemplated by the agreement absent a showing of the unique "circumstances of the case." (See *Murrey, supra,* 87 Cal.App.5th at p. 1249 [holding arbitrator's discretion to allow additional discovery based "'on the facts of the particular claim'" did not cure unconscionability of discovery limitations because the arbitrator would be starting "with the presumption three depositions and a handful of written discovery was what the parties bargained for"].) Further, the discovery provision here does not incorporate the language the *Ramirez* court found adequate under *Armendariz*—that the arbitrator would have authority to resolve discovery disputes in a manner "to allow a full and equal opportunity to all parties to present evidence" that the arbitrator deems material and relevant. (See *Ramirez*, at p. 506.) In addition, without the ability to propound any interrogatories, take a PMQ deposition, or take more than two

_____

[9] The JEMD defendants argue the discovery provision in the AAA rules would apply pursuant to the "Procedures and Rules" set forth in section G of the arbitration agreement, which states the arbitration will be held in accordance with the current AAA rules. However, subsection (v) of section G specifies the amount of allowable discovery for the arbitration (including, for example, the right to take two depositions of fact witnesses), and it sets the standard for the arbitrator to grant additional discovery. It is not a reasonable interpretation of the arbitration agreement that a reference to the procedural AAA rules in section G would control over the embedded subsection that specifies the amount of allowable discovery.

percipient witness depositions, an employee would have difficulty making a showing that specific additional discovery (for example, a list of proposed deponents) is warranted under the circumstances.

Moreover, we do not read the Supreme Court's decision in *Ramirez* to mean that any discovery provision, regardless of the inadequacy of the allowable discovery, is enforceable so long as the arbitrator has discretion to order additional discovery.[10]  Such a reading is inconsistent with *Ramirez*'s holding that the arbitrator's ability to order additional discovery is only one of five factors a court should consider in deciding whether a discovery provision is unconscionable.  (*Ramirez, supra,* 16 Cal.5th at p. 506.)  In this case, three of the additional factors support a

---

[10]    We recognize that prior to *Ramirez*, at least one court found a limited discovery provision could be remedied by authorizing the arbitrator discretion to allow additional discovery.  In *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 982 the arbitration agreement's discovery provision limited each party to the depositions of one individual witness and any expert witness designated by the other party, requests for production of documents, and specified subpoena rights.  Additional discovery could be permitted by the arbitrator "'upon a showing of need.'"  (*Ibid.*)  Our colleagues in Division Six found this provision was not unconscionable because "[although] the . . . agreement purports to limit discovery to one deposition of a natural person, the agreement gives the arbitrator broad discretion . . . to order the discovery needed to sufficiently litigate the parties' claims."  (*Id.* at p 984.)  The *Dotson* court did not consider the other factors later articulated by *Ramirez* for determining whether a discovery provision is unconscionable.  Nor was the *Dotson* court's conclusion uniformly accepted.  (See, e.g., *Murrey, supra,* 87 Cal.App.5th at p. 1249.)

21

finding of unconscionability—the woefully inadequate default amount of discovery; the dramatic difference between that amount and what is allowed in conventional discovery; and the asymmetry of the limited discovery given that employers have greater access to the necessary information and collectively are entitled to twice the number of depositions and other discovery as compared to Brooks. Accordingly, the arbitration agreement's discovery provision is substantively unconscionable because it does not provide for sufficient discovery for Brooks to substantiate her claims.

2. *The arbitration agreement's mediation requirement is not substantively unconscionable*

Courts generally refuse to enforce mediation or other pre-arbitration requirements in arbitration agreements when they apply only to the employee and not the employer, the employer controls the mediation process, or the employee is not permitted to have an attorney present for the mediation. (See, e.g., *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1283-1284 [unilateral requirement that plaintiff "submit to discussions with his supervisors" as a condition precedent to arbitration was substantively unconscionable because it was "an employer-controlled dispute resolution mechanism (i.e. one without a neutral mediator)" and would allow defendants a "'free peek' at plaintiff's case"].) In this case, the mediation provision provides for a neutral mediator, does not prohibit attorney representation at the mediation, and applies to both parties. These factors alleviate the potential for unconscionability. Brooks contends the mediation provision is unconscionable because it allows the JEMD defendants to obtain "a free peek" at her case and it does not toll the time limit for bringing

22

administrative claims. These arguments lack merit. First, because the mediation would be conducted by a neutral mediator, Brooks would be in control of how much information she shared with the mediator and what she authorized the mediator to divulge to the JEMD defendants. Second, although Brooks is correct that the mediation provision does not toll the time in which she must exhaust administrative remedies, nothing in the agreement prevents Brooks from pursuing her administrative claims during the mediation process.[11]

      3.    *The arbitration agreement's requirement that Brooks pay a filing fee is not unconscionable*

"[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz, supra,* 24 Cal.4th at pp. 110-111.) Such a rule serves to "ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation." (*Id.* at p. 111.)

As discussed, the arbitration agreement required Brooks to pay an initial filing fee of $300 or the amount of the court filing fee, whichever is less. Brooks argues this requirement is

---

[11]    A pre-litigation mediation requirement could delay Brooks's ability to litigate her claims because there is no time limit for the commencement or completion of the mediation. However, Brooks has not raised this argument. Nor do the parties address whether a prevailing plaintiff could recover the costs of mediation under FEHA or the Labor Code.

unconscionable because there is no exception for a plaintiff who first files an action in court, and thus must pay two filing fees— first in court and later in arbitration. Brooks's contention the filing fee is substantively unconscionable is not persuasive.

We recognize the potential hardship for an employee who is required to pay two filing fees if the employee seeks a court determination on whether the arbitration agreement is enforceable. However, as discussed, Brooks did not need to have the trial court decide unconscionability—the arbitration agreement provided for the arbitrator to make this determination. Further, the filing fee is otherwise consistent with *Armendariz* because it imposes the "type of expense" the employee would incur if the employee were able to bring the action in court. (*Armendariz*, *supra,* 24 Cal.4th at p. 110-111.) Courts have generally upheld similar fees. (See *Torrecillas v. Fitness International, LLC* (2020) 52 Cal.App.5th 485, 500 [requirement that employee pay filing fee "equivalent to the amount required for the employee to file a complaint in court" was not substantively unconscionable], disapproved on another ground in *Ramirez, supra*, 16 Cal.5th at pp. 505-506; *De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, 491 ["Viewing the $100 as a minimal filing or administrative fee . . . we find the costs provision is not unconscionable."], disapproved on another ground in *Ramirez*, 16 Cal.5th at pp. 505-506; cf. *Mills, supra,* 84 Cal.App.5th at p. 1053 [finding $250 fee unconscionable because agreement barred reallocation to employer].)[12]

_____

[12] Brooks's argument that the agreement is unconscionable because it requires the parties to pay their own attorneys' fees is

24

E.	*The Trial Court Abused Its Discretion in Declining To Sever the Unconscionable Discovery Provision*

"If a contractual clause is found unconscionable, the court may, in its discretion, choose to do one of the following: (1) refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results.  [Citation.] . . .  The trial court's decision . . . is reviewed for abuse of discretion."  (*Ramirez, supra*, 16 Cal.5th at p. 513.)  "At the outset, a court should ask whether 'the central purpose of the contract is tainted with illegality.'  [Citation.]  If so, the contract cannot be cured, and the court should refuse to enforce it.  If that is not the case, the court should go on to ask first, whether the contract's unconscionability can be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary.  [Citation.]  If no 'reformation is required,' the offending provision can be severed or limited, and 'the rest of the arbitration agreement left intact,' then severance or restriction is the preferred course for provisions that are collateral to the agreement's main purpose.  [Citations.]  If the unconscionability cannot be cured by extirpating or limiting the offending provisions, but instead requires augmentation to cure the unconscionability, then the court should refuse to enforce the contract.  [Citation.]  Courts

---

likewise unavailing.  As discussed, the agreement provides that the parties will pay their own attorneys' fees "subject to any remedies to which that party may later be entitled under applicable law."  Thus, if Brooks prevails in the arbitration, she will be entitled to recover her attorneys' fees pursuant to the applicable fee-shifting statutes.

25

cannot 'rewrite agreements and impose terms to which neither party has agreed.'" (*Id.* at p. 516.)

"Even if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions. [Citation.] This part of the inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage. [Citation.] If the answer to either question is yes, the court should refuse to enforce the agreement." (*Ramirez, supra,* 16 Cal.5th at pp. 516-517.) "Although there are no bright-line numerical rules regarding severance, it is fair to say that the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy." (*Id.* at p. 517.)

"Finally, if the contract contains a severance clause, the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced. . . . [¶] Accordingly, courts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; and enforcing the balance of the contract would be in the interests of justice." (*Ramirez, supra,* 16 Cal.5th at p. 517.)

Here, only the discovery provision is substantively unconscionable, and the provision can be severed without disrupting the remainder of the agreement. This is in contrast,

26

for example, to an arbitration agreement that lacks mutuality with respect to covered and excluded claims, thereby requiring the agreement to be rewritten to ensure the arbitration provisions are applied equally to all parties.  (See e.g., *Ramirez v. Charter Communications, Inc.* (Feb. 24, 2025, B309408) __Cal.App.5th __ [2025 Cal. App. LEXIS 99, *13-14] [on remand from Supreme Court in *Ramirez, supra,* 16 Cal.5th 365, Court of Appeal declined to sever three unconscionable provisions, explaining as to lack of mutuality that "[b]y simply deleting section C [on exclusions from arbitration], thereby subjecting all 14 [excluded] claims to arbitration, we would be effectively rewriting the Agreement to cover claims Ramirez did not agree to arbitrate"].)  Although adequate discovery is essential to ensuring a fair arbitration, because the remainder of the agreement is not unconscionable, we cannot say the central purpose of the agreement is tainted with illegality.

Further, on the unique facts of this case, severance of the discovery provision is in the interests of justice because it would enforce the parties' contractual agreement to resolve disputes by arbitration, while ensuring adequate discovery.  The arbitration agreement contemplates that the AAA rules apply, and absent a conflicting (and more limited) discovery provision, the AAA discovery rules would govern.  We held in *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 that the AAA rules provide for adequate discovery under *Armendariz.  (Id.* at p. 1476 ["There appears to be no meaningful difference between the scope of discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules, certainly not the role of the arbitrator in controlling the extent of actual discovery permitted."]; accord, *Lane v. Francis Capital Management LLC*

(2014) 224 Cal.App.4th 676, 693 [lack of express discovery provision did not render arbitration agreement unconscionable where agreement explicitly referenced AAA rules].)

We recognize that some courts have refused to sever a discovery provision where it would be replaced by the AAA discovery rules because that would amount to rewriting the agreement. (See *Fitz, supra*, 118 Cal.App.4th at p. 727 [replacing the arbitration agreement's "limitations on discovery with the rules of AAA would be in effect to rewrite the agreement"].) We agree with *Fitz* that on the facts there, where the employer "deliberately replaced the AAA's discovery provision with a more restrictive one" that deprived employees of their right to discovery (by limiting discovery to two depositions unless a "compelling need" was shown), the employer "should not be relieved of the effect of an unlawful provision it inserted in the [arbitration agreement] due to the serendipity that the AAA rules provide otherwise." (*Id.* at p. 721.) Further, in *Fitz* the arbitration agreement was one-sided in that it exempted from arbitration the types of claims more likely to be brought by employers. (*Id.* at p. 725; see *Jenkins v. Dermatology Management, LLC, supra*, 107 Cal.App.5th at pp. 646-647 [declining to sever restrictive discovery provision where it was one of four substantively unconscionable provisions, explaining "'[t]he trial court [here] could have reasonably concluded that "[the four substantively unconscionable] defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage"'"].)

In addition, as discussed, at the time the parties entered into the arbitration agreement in 2022, the Courts of Appeal were

divided on what type of arbitrator discretion was sufficient to cure the unconscionability of a discovery provision that provided for only limited discovery. (Compare *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 978 with *Murrey, supra,* 87 Cal. App.5th at p. 1249.) Accordingly, we cannot say the JEMD defendants engaged in an illegal scheme or systematic effort to disadvantage their employees. (See *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1075-1076 ["there is no indication that the state of the law was 'sufficiently clear at the time the arbitration agreement was signed to lead to the conclusion that this [appellate arbitration provision] was drafted in bad faith'"].)

The trial court denied the motion to compel arbitration after finding three of the provisions in the arbitration agreement were substantively unconscionable, including the mediation requirement and fees provision. Therefore, it held, the agreement was permeated with unconscionability. In light of our conclusion that only the discovery provision is substantively unconscionable and the agreement is not tainted with illegality, it was an abuse of discretion for the trial court to refuse to sever the unlawful provision and enforce the agreement.

## DISPOSITION

The order denying the motion to compel arbitration is reversed.  The matter is remanded to the trial court with directions to enter an order granting the motion to compel arbitration after severing the discovery provision in section G(v) from the agreement.  The parties are to bear their own costs on appeal.


FEUER, J.

We concur:


MARTINEZ, P. J.


STONE, J.

30